IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHRISTOPHER WILLIAM ODEN,**

    **Petitioner,**

  v.                                                                    Civil Action No. 3:13cv93
                                                                          Criminal Action No. 3:11cr56
                                                                           (Judge Bailey)

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On August 15, 2013, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt.# 99). On August 20, 2013, the undersigned made a preliminary review of the petition and found that summary dismissal was not warranted; accordingly, the respondent was directed to answer. On September 17, 2013, the respondent filed a motion to dismiss and a response in opposition. The Court issued a Roseboro[1] Notice on September 17, 2013. On February 10, 2014, petitioner filed a reply.

### II. Facts

**A. Conviction and Sentence**

Petitioner was named in a one-count indictment with a forfeiture provision on September 20, 2011. On October 28, 2011, petitioner signed a plea agreement, agreeing to plead guilty to Count One, possession of child pornography, in violation of 18 U.S.C. §2252A(a)(5)(B). (Dkt.# 30 at 1). The maximum penalty for the offense being pled to was specified as imprisonment for a period of not more than ten (10) years,[2] a fine of $250,000.00, and not less than five (5) years and not more than

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975).

[2] The PreSentence Investigation Report ("PSR") indicates that ¶2 of the plea agreement contained an incorrect maximum penalty. The maximum penalty should have been "not less than 10 years nor more than 20 years. The

Life on Supervised Release. (Id.). The parties stipulated and agreed that petitioner's offense involved at least 10 images but fewer than 150. (Id., ¶9 at 3). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 10. Defendant is aware that Title 18 United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Id., ¶10 at 4-5).

On November 1, 2011, the petitioner, then aged 39 with a high school education, entered his plea in open court. (Dkt.# 65 at 5). Petitioner testified that he could read, write and understand English and he he denied ever being treated for mental illness or addiction to narcotics. (Id. at 3 – and 5). Petitioner reported that the only medication, drug, or alcohol he had had within the previous 24 hours were his prescribed medications, described as Zyrtec and Motrin. (Id. at 3 – 4). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud or summarized in open court each paragraph of the plea agreement, including the paragraph 10, *supra*. (Id. at 6 – 11). The Court specifically asked petitioner if he and his attorney had reviewed the plea agreement in detail before he signed it, and petitioner indicated that they had. (Id. at 12). The Court inquired of petitioner whether he understood that under the terms of the plea agreement, he was giving up the majority of his appellate and collateral attack rights, and petitioner replied "[y]es, Your Honor." (Id. at 11 and 16). The Court inquired of petitioner's counsel whether he believed that petitioner fully understood

---

Plea Agreement did not take into account the fact that the defendant has a prior qualifying conviction, subjecting him to an enhanced sentence." PSR, Dkt.# 44, ¶137 at 30.

the importance and significance of the waiver, and counsel replied "[y]es, sir, I do." (Id. at 11 – 12). The Court informed petitioner that the maximum sentence for the crime which he was pleading could be imprisonment for a period of not more than ten (10) years, a fine of up to $250,000.00, and not less than five nor more than life on supervised release (Id. at 14), but that the ultimate sentence he received could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 16). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone at that time, and it would not be possible to know until the sentencing hearing and petitioner said "[y]es, Your Honor." (Id. at 15 – 16 and 27 - 28). The Court then summarized the rights petitioner was giving up by pleading guilty. (Id. at 17 - 18).

To establish a factual basis for the plea, the Government presented the testimony of Trooper William R. Garrett, of the West Virginia State Police's Crimes Against Children's Unit and the Internet Crimes Against Children's Task Force. (Id. at 19 - 26). Petitioner did not object. After the factual basis for the plea was presented, the petitioner entered his plea. (Id. at 27). The Court asked petitioner if he believed that he was, in fact, guilty of Count One of indictment and petitioner advised the Court that he was. (Id. at 27 and 28). The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 28). The Court further asked petitioner whether he thought that there was anything he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner denied that there was. (Id.). At the conclusion of the hearing, the Court determined that petitioner was competent, that he had made his plea freely and voluntarily, with full understanding of its consequences, and that the elements of the crime in Count One had been established beyond a reasonable doubt. (Id. at 28). Petitioner did not object to the Court's finding.

On February 26, 2012, petitioner appeared with counsel before the court for sentencing. Defense counsel entered 8 objections to the PSR. (Dkt.# 66 at 4 - 19). The first, that petitioner's prior qualifying conviction should not be considered a predicate offense for purposes of enhancing

3

his sentence, was granted, because the error in the government's calculation of the maximum sentence in the plea agreement, repeated at the Rule 11 hearing, would require that either the court be limited to sentencing petitioner to the incorrect maximum as set forth in the plea agreement; or that petitioner withdraw his plea, and either sign a new plea agreement or go to trial. Defense counsel advocated for "specific performance" of the plea agreement's stated 10-year maximum, and the victim's mother requested that petitioner be sentenced that day. Consequently, the Court acquiesced to both. (Id. at 4 – 13). The second objection, that the 5-level sentencing enhancement for a pattern of activity involving sexual abuse of a minor should not apply, was overruled. (Id. at 30). The third objection, that the PSR should not include a "victim impact" statement from the mother of the victim, because the victim herself was already 18, voluntarily consented to be in a relationship with petitioner, and did not consider herself a victim, was overruled. (Id. at 30 - 31). The fourth objection, to the imposition of any or all of the special conditions of supervised release relating to sex offenders set forth in the PSR, was overruled. (Id. at 31). The fifth objection, that ¶50 in the PSR, regarding pornographic images of a female other than the victim found on petitioner's computer, be corrected to indicate that the female was over 18 at the time of the photograph, because it had been "satisfactorily complied with," was withdrawn. (Id.). Objection Six, that the information contained in PSR ¶¶ 85 – 89 regarding petitioner's North Carolina conviction be removed, or alternatively, that the North Carolina case file relied upon should be made available for the parties to review, was overruled. (Id. at 32). Objections Seven and Eight, having already been complied with, were withdrawn. (Id.).

Petitioner was found to have a base offense level of 18. (Id. at 33). After a five-level enhancement for the pattern of exploitation of a minor, plus a two-level increase for use of a computer, a two-level use for the number of images, petitioner had an adjusted offense level of 27, less a two-level reduction for acceptance of responsibility. (Id.). The Government declined to move for the third level reduction, citing the "significant holes . . . in what [petitioner] . . . has told

authorities . . . [including] omissions of facts" and other discrepancies.³ The result was a total offense level of 25. (Id. 33 - 34). With a criminal history category of III, the Court found that the Guidelines called for a sentencing range of seventy to eighty-seven months of imprisonment; no eligibility for probation; supervised release of five years to life; a fine of $10,000.00 - $100,000.00; and a mandatory special assessment of $100. (Id. at 34). The government did not object; defense counsel noted his earlier objections.

The then-18-year old victim in the case made a statement in petitioner's defense. (Id. at 35). The victim's mother, a lawyer herself, then gave a statement recounting the damage inflicted on her daughter and family by petitioner's predatory manipulations; petitioner's threats and attempts to intimidate her and others who attempted to keep him from the victim; and the stress, loss of trust, and alienation it had caused between her daughter, family, and friends. (Id. at 35 – 46). The victim was then sworn in and her testimony was taken; she testified that she had immediately left her home in New York the day after she turned 18 to go to West Virginia to live in petitioner's home with six members of his extended family while he was incarcerated. Further, she testified that she was "devoted to" the petitioner and that they were now engaged. She insisted that she was not a victim. (Id. at 46 – 57).

Petitioner's mother and then his brother testified as to their confidence in petitioner and their hope that he receive a reduced sentence. (Id. at 57 – 62 and 62 – 66). Defense counsel reiterated petitioner's objections to the PSR, advocating for the Court to exercise its discretion and impose a sentence of time already served, to be followed by a 5-year period of supervised release. (Id. at 67 – 76). Petitioner took the opportunity to allocate, speaking about himself, his family values; achievements in the community; military history; and his religious involvement. He minimized his culpability in his past and instant criminal activities; (Id. at 77 - 91). The government countered,

---

³ Dkt.# 66 at 28 – 30.

pointing out multiple discrepancies in petitioner's statement; his past criminal history; the contradictions between his stated "family values" and his involvement in videotaping his own young son in past criminal activities for which he was convicted of raping a 13-year old girl; and the fact that his previous incarceration and registration as a sex offender had had little deterrent effect on him. The government reiterated its position that petitioner had not accepted responsibility, and rather than recommending a sentence in the lower end of the guideline, instead recommended that petitioner receive a sentence at the "highest end of that guideline range, if not higher[.]" (Id. at 91 - 94).

Taking all necessary information into consideration, the Court declined to grant petitioner's motion for a downward departure. Instead, the Court sentenced petitioner above the recommended guidelines to the maximum sentence allowable, a term of 120 months imprisonment, to be followed by a twenty year term of supervised release. (Id. at 103). The Court found that the maximum sentence was warranted because: of the seriousness of the offense; that the victim, regardless of whether she realized it yet, was indeed a victim; petitioner had "wrecked a family;" petitioner was a predator who trolled the internet looking for "people who are not his match when it comes to that type of thing" to control, manipulate, and threaten; and that petitioner failed to comply with the Sexual Offender requirements already imposed on him before he committed the present crime. Further, the Court noted that while it appreciated petitioner's military service, it also noted that it was while petitioner was in the military that he committed his first offense. (Id. at 101 - 102).

The Court reiterated the application of the appellate rights waiver in petitioner's plea agreement, but advised petitioner that if he believed his waiver was unenforceable; his plea somehow unlawful or involuntary; or if there were some other defect in the proceedings not waived by his guilty plea, what the time frame was for filing a notice of appeal was, and explained his *in forma pauperis* rights. (Id. at 104).

**B. Direct Appeal**

On appeal, petitioner argued that the waiver in his plea agreement was not enforceable because the government breached the plea agreement by not recommending a sentence at the low end of the guidelines. In an unpublished *per curiam* opinion issued on August 24, 2012, the Fourth Circuit Court of Appeals found that the waiver was enforceable and dismissed the appeal, noting that because there were discrepancies and omissions in petitioner's account of what had occurred, petitioner had not fulfilled his obligations under the plea agreement to be forthright and truthful and to give complete information about his criminal involvement. (Dkt.# 76). Petitioner filed a petition for rehearing and rehearing *en banc*, which was denied on October 9, 2012. (4th Cir. Dkt.# 48)(12-4119).

**C. Federal Habeas Corpus**

**First §2255 Motion**

On February 17, 2012, the day after his appeal was docketed in the 4th Circuit Court of Appeals, petitioner filed a Motion to Dismiss Counsel for Ineffective Counsel and Be Appointed New Counsel in the sentencing court, which was docketed both as a motion to appoint counsel (Dkt.#53) and as a motion to vacate (Dkt.# 52).[4] Because the motion to vacate was not on a court-approved §2255 form, petitioner was sent a Notice of Deficient Pleading, instructing him to correct his deficient pleadings within twenty-one days to maintain the civil §2255 motion case. Petitioner did not correct the deficiency. Accordingly, on April 2, 2012, the §2255 was dismissed without prejudice for the failure to prosecute. (Dkt.# 72).

**Second §2255 Motion**

    **Petitioner's Contentions (Dkt.# 99)**

Petitioner raises three grounds, contending that counsel was ineffective:

---

[4] To the extent that the motion pertained to new counsel, it was terminated on February 24, 2012, pursuant to a ruling by the Fourth Circuit Court of Appeals. (Dkt.# 51).

1) before the plea, for failing to investigate facts and circumstances of the offense relative to application of the U.S. Sentencing Guidelines before advising petitioner to sign the plea agreement, rendering his plea involuntary;

2) before entry of the plea, for failing to inform petitioner that stipulation didn't identify all facts in dispute; and

3) failing to inform petitioner of a dispute related to imposing a sentence above the minimum, pursuant to stipulation.

Petitioner's motion did not specify any relief requested.

**Government's Response (Dkt.# 107)**

The government argues that the petition should be dismissed because petitioner validly waived his appellate and collateral attack rights in a valid Rule 11 hearing, and that under such circumstances, upon the government's motion to dismiss, the waiver should be enforced without requiring the government to brief the merits. Further, the government contends that petitioner's claims have no merit or support in the record.

**Petitioner's Reply (Dkt.# 110)**

Petitioner reiterates his arguments and attempts to refute the government's position on the same. He insists that had he known all the sentencing factors confronting him, he would have gone to trial instead of entering the plea. As relief, petitioner requests that his conviction and sentence be vacated and the matter be set for trial, or alternatively, that he be granted an immediate evidentiary hearing.

### III. Analysis

**A. Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255

requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va Jan. 4, 2006).

## B. Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally

9

attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005)(internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement, and petitioner said that he did. (Dkt.# 65 at 11). Further, petitioner specifically testified that he understood that, incident to paragraph 10 of his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if he received a sentence of not more than ten years. (Id. at 14). Petitioner received a ten year sentence. (Dkt.# 66 at 103). The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, precluding review of any claims of ineffective assistance arising before the entry of the plea, such as his Ground Two claim that counsel was ineffective for failing to inform petitioner that the stipulation in the plea agreement did not identify all facts in dispute.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner's Ground One claim has raised a challenge to the validity of the plea itself, and his Ground Three claim is so unclear it is uncertain whether it alleges that counsel was ineffective

before or after the entry of the plea, those claims are excepted from his waiver and will be given review.

**C. <u>Ineffective Assistance of Counsel</u>**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**Ground One: Whether counsel was ineffective before the plea, for failing to investigate facts and circumstances of the offense relative to application of the U.S. Sentencing Guidelines before advising petitioner to sign the plea agreement, thus rendering the plea involuntary.**

Petitioner contends that because counsel was ineffective for failing to properly advise him as to the sentencing consequences of the plea agreement before the plea, his plea was involuntary.

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any ineffective assistance of counsel claims occurring prior to the entry of his guilty plea, except those that "call into question the validity of the plea or the §2255 waiver itself." Braxton, *supra* at 503. A guilty plea, and any waiver made pursuant to it, must be made knowingly, voluntarily, and intelligently. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed. 2d 274 (1969); Bryant v. Cherry, 687 F.2d 48, 49 - 50 (4th Cir. 1982), *cert. denied*, 459 U.S. 1073 (1982). In order to plead voluntarily, a defendant must know the direct consequences of his plea, including the actual value of any commitments made to him. Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed. 2d 437 (1984); U.S. v. White, 366 F.3d 291, 298 (4th Cir. 2004). Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, before a court accepts a guilty plea, the court must determine that the defendant is competent to enter the plea and that the plea is knowing and voluntary. Rule 11 requires that the court personally inform the defendant of, and ensure that he understands, the nature of the charges against him and the consequences of his guilty plea. United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999). In doing so, the Court must advise the petitioner of the rights he is giving up by pleading guilty. Rule 11(b)(1). Moreover, the Court must discuss the nature of the charges against the petitioner, the penalties that could be imposed, and certain other terms or conditions of the plea agreement. Id. The Court must then establish that the petitioner is entering the plea voluntarily -- without force, threats, or promises made outside the agreement. Rule 11(b)(2).

A defendant's statement that his plea is voluntary and knowing is generally considered conclusive on these issues. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and

14

convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992). Moreover, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. United States v. Lambey, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

Petitioner argues that his plea was not intelligent and voluntary because counsel failed to investigate the facts and circumstances relevant to the application of U.S.S.G. §2G2.2(B)(5), before advising him to sign the plea agreement. He contends that counsel misadvised him that U.S.S.G. §2G2.2(B)(5) did not apply to him, because the instant offense did not involve inducing the minor to create a sexually explicit visual depiction of herself and the previous offense did not involve physical sexual conduct with a minor.

This contention is clearly refuted by the record, most specifically by a copy of an October 27, 2011 letter from counsel to petitioner, four days before petitioner's plea hearing, attached to the government's response. In it, counsel states, in pertinent part:

> You currently face one count of possession of child pornography . . . **If found guilty . . . you face a maximum term of imprisonment of up to ten (10) years. While the Court may sentence you at the maximum,** it generally follows the Federal Sentencing Guidelines, taking into account any statutorily required minimum sentence. In calculating your sentence, the Guidelines take into account the crimes for which you were convicted and your criminal history. The instant crime is converted to an offense level, which is found on the left side of the table I am enclosing for your review. The criminal history categories are found on the top of the table. Your criminal history is assigned a category and is calculated based on the number of prior convictions you have. When both factors are calculated, you can find the "guideline range."
>
> **For a child pornography case, the base offense level can be found in U.S.S.G. §2G2.2**. **Under that section, the base offense level is set at 18 for Count 1. Other factors, known as specific offense characteristics, can increase or decrease your base offense level. Several specific offense characteristics listed in U.S.S.G. §2G2.2 are applicable to your case.**

> **A. You will receive a five (5) level increase for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor.**
>
> **B. You will receive a two (2) level increase because a computer was involved in the offense.**
>
> **E. You will receive a two (2) level increase based on the number of images alleged to have been recovered from your computer. The government alleges that the relevant conduct (the number of images) involved in this case is at least10 images but fewer than 150 images. This range is based on the allegation that the child pornography possessed consisted of one video of the alleged victim masturbating. Under the Guidelines, one video equals 75 still images.**
>
> **Adding these specific offense characteristic increases to the base offense level of 18 yields a total offense level of 27**.

(Dkt.# 107-2 at 1-2)(emphasis added).

It is apparent that counsel did, indeed, carefully, clearly and unequivocally advise petitioner as to the application of U.S.S.G. §2G2.2(B)(5) prior to the entry of the plea.

Moreover, the following day, petitioner signed a plea agreement containing this paragraph:

> 9. Pursuant to Sections 6B1.4, 1B1.3, and 2G2.2 of the Guidelines, the parties hereby stipulate and agree that the offense involved at least ten images but fewer than 150. The parties understand that pursuant to Section 6B1.4(d), the Court is not bound by the above stipulation and is not required to accept same. Defendant understands and agrees that should the Court no accept the above stipulation, defendant will not have the right to withdraw his plea of guilty.

Dkt.# 30 at 3.

Subsequently, at the Rule 11 hearing, four days later on November 1, 2011, this exchange occurred:
. . .

> THE COURT: At any time during this hearing, if there's anything that you don't understand, or something you want to talk to your lawyer about, you just tell me and we'll recess and allow to you do that. All right?
>
> THE DEFENDANT: Yes, sir.
> . . .
>
> THE COURT: Mr. Oden, did you review the plea agreement in detail with your attorney before you signed it?

> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Does the written plea agreement represent the full and complete agreement between yourself and the Government?
>
> THE DEFENDANT: Yes, Your Honor.
> . . .
>
> THE COURT**: Do you understand that the United States Sentencing Guidelines may play an important role in determining a sentence in your case? Have you and your lawyer talked about how the Sentencing Guidelines might apply to your case?**
>
> THE DEFENDANT: **Yes, Your Honor**.
>
> THE COURT: **Do you understand that the Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed**?
>
> THE DEFENDANT: Yes, Your Honor.

(Dkt.# 65 at 4 - 15)(emphasis added).

Both counsel and the magistrate judge fully informed petitioner of the impact of his prior criminal history and relevant conduct on his future sentence and ensured that petitioner had read and understood the agreement. Petitioner has presented no evidence to suggest that his representations during his plea were untruthful or involuntary. The undersigned finds petitioner voluntarily entered into the plea agreement; that he was made fully aware of the consequences of his plea – including the application of U.S.S.G. §2G2.2(B)(5) on his maximum term of imprisonment. Again, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

This claim is not only unsupported by the record, it is also without merit.

**Ground Three: Whether counsel was ineffective for failing to inform petitioner of a dispute related to imposing a sentence above the minimum, pursuant to the stipulation.**

This claim in petitioner's §2255 motion is so tersely and unclearly stated, it is difficult to ascertain whether he is alleging that counsel was ineffective before or after the entry of the plea, for

failing to inform him that there was a dispute as to whether U.S.S.G. §2G2.2(B)(5) included the current offense and all relevant conduct. His reply to the government's dispositive motion, while it enlarges on the issue somewhat, sheds little more light on the issue.

While *pro se* petitions are to be liberally construed, as set forth in Haines v. Kerner, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977)(internal quotations omitted). Nevertheless, principles requiring generous construction of *pro se* complaints have their limits; while district courts are to construe *pro se* complaints liberally, they are not required "to conjure up questions never squarely presented to them. District judges are not mind readers." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Here, because petitioner's claim is so unclearly stated, it will be liberally construed as a claim that counsel was ineffective after the entry of the plea, and given review.

Petitioner had already admitted under oath at his plea hearing that he and counsel had reviewed the evidence against him; the elements of the crime; and the maximum penalty he faced if he went to trial, before he decided to accept the plea. To the extent petitioner is now claiming that before sentencing, counsel failed to accurately advise him of the possibility of an upward departure, a review of same excerpt from the October 27, 2011 letter from counsel, set forth *supra,* reveals that this claim, too, has no support in the record. Counsel's pre-plea letter clearly stated that the maximum sentence was a possibility. Moreover, it clearly advises petitioner that not only was U.S.S.G. §2G2.2(B)(5) fully applicable to him, but also repeatedly stresses that counsel's estimates as to the sentence petitioner might receive were not guarantees.[5]

---

[5] Dkt.# 107-2 at 1, 3, and 5.

Despite the fact that counsel had little grounds to challenge the U.S.S.G. maximum sentence, at sentencing, he did so anyway, advocating on petitioner's behalf, attempting to persuade the Court not to apply the enhancement and to depart downward from the guidelines. Counsel prevailed in avoiding the enhancement that would have doubled petitioner's maximum sentence. Simply because the Court denied counsel's other request to sentence petitioner to time already served does not render counsel's performance defective. Further, it is worth noting that while there is no proof in the record that counsel was ineffective, even if he had been, petitioner cannot prove prejudice. Petitioner's insistence that "if only" he had known about all the ramifications of U.S.S.G. §2G2.2(B)(5) he would have refused the plea agreement and gone to trial omits consideration of a crucial fact. Had there been no plea agreement, the government's error in calculating his maximum sentence would never have occurred, because the probation officer would have been the only one to calculate his sentence. The probation officer's calculation of petitioner's sentence in the PSR correctly included consideration of petitioner's prior conviction. Consequently, based on the overwhelming evidence in the record, assuming petitioner's likely conviction at trial, at sentencing petitioner would have then faced the possibility of the enhanced sentence of "not less than 10 years nor more than 20 years,"[6] instead of the 10-year sentence he is now serving.

Petitioner was fully and fairly advised at his plea hearing that no one could predict the sentence he might receive, and that he could not withdraw his plea if he received a sentence he did not like, and he indicated his understanding.[7] Petitioner received the maximum sentence allowable under the circumstances, not for any failure on counsel's part, but for the seriousness of the offense; his own failure to be fully truthful and forthright with the government; his failure to be deterred after

---

[6] PSR, Dkt.# 44, ¶137 at 30.

[7] Dkt.# 65 at 16.

his prior convictions; and his obvious denial as to his complicity in his past and present crimes. This claim likewise has no merit and should be dismissed.

## IV. Recommendation

Based upon the foregoing, the undersigned recommends that the petitioner's §2255 motion be **DENIED** and **DISMISSED with prejudice** from the docket.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by April 21, 2014**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: April 7, 2014

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE